Good morning, everyone. Before we begin our oral arguments this morning, Judge Fernandes and I would like to thank and acknowledge Judge Roger Rollman, who is visiting with us from the Eighth Circuit. His chambers are in Sioux Falls, South Dakota, so we're really pleased that he could be here with us for a few days. Thank you, Judge Rollman. Thank you. Thank you, Judge Rogers. Thank you. Great. Okay. Our first case up for oral argument this morning is United States v. Pedro Carrasco. Good morning, Your Honor. Steve O'Malley presenting Mr. Carrasco, and may it please the Court, Counsel. So this case comes before the Court on a conditional plea that was entered by Mr. Carrasco, reserving the right to appeal his initial motion to suppress evidence and the right to appeal his motion for reconsideration and request for a Franks hearing. It comes to the Court in kind of a unique situation, and the unique situation is this. First of all, on the initial motion to suppress is not an issue in this case because it would be conceded that the initial motion to suppress, regardless of the Franks issues, was probably a correct decision, but now we have the Franks issues we have to decide. But it comes before this Court with an incomplete record, and the reason it comes before this Court with an incomplete record is because Franks v. Delaware requires that there be an initial substantial showing of an intentional misstatement or reckless omissions of fact in order to justify a Franks evidentiary hearing. There was never a Franks evidentiary hearing in this case. In fact, what happened was Mr. Carrasco, I won't go through the whole history, but had an initial counsel that filed for the motion for reconsideration. Franks hearing raised three issues. Three issues are in the brief. One deals with the lack of disclosure of complete criminal history, the fact that the co-defendant said that drugs were going to be delivered at Pelican Truck Point, and then the third was the phone call on February 6th. What wasn't in the record before the District Court was the recorded interview by the confidential informant in this case, and Mr. Carrasco raised that issue before the District Court in a motion to replace his second counsel who was refusing to file a supplement or a second Franks motion based on that interview. This is new to me. I thought the whole, I thought the whole, you were, I thought the challenge here was to the fact that on the motion for reconsideration it was brought out that the government had not turned over the prior criminal record of the confidential source. That was the first issue with the initial lawyer, yes. With the initial defense or trial counsel. But I thought that's the whole basis for your challenge to the District Court's motion denying the motion for reconsideration. No, the basis here is that, so I say this is a unique posture. The Rule 11, the Rule 11A2 plea, the conditional plea, reserved Mr. Carrasco's right to challenge the court's denial of the Franks hearing also. And we are here because, like I said, the procedural posture is different. As I understood it, you asked the District Court to reconsider, and essentially you asked for a Franks hearing. On the initial, yes. And that was denied. Right. There were three grounds that were denied. Yes, you just went through them. And then there was an ex parte hearing in which Mr. Carrasco was attempting to remove the second trial counsel because she did not, she felt differently about filing a motion to supplement the record and ask for another Franks hearing based on the recorded statement by the confidential informant. And in that ex parte hearing, the trial counsel said, so that the lawyer on appeal and the defendant's statement, I'm going to place it in the record, and the court granted permission for the trial lawyer to put that written transcript in the record. And the written transcript is actually the primary evidence that shows that at least a substantial showing could be made that would justify a Franks hearing. Well, let me ask you this. Maybe you should just better clarify for me, and I don't... Why should we reverse? I think it should be remanded for a Franks hearing. I think a substantial showing based on... And the reason why we should remand for a Franks hearing is because? Is because having your client enter a conditional plea to an issue that on an incomplete record is really not... Okay. Now, if I were to go back again and look at the blue brief, this is all going to be laid out in the blue brief? Yes. Yes. Yeah. I'm not saying that the initial... I think the initial motion for a Franks hearing, albeit had some good arguments, the district court may not have committed error. But when you add the fact that the confidential informant's transcript added to those three issues... I mean, the confidential informant literally is denying knowledge of any illegal conduct, albeit sort of intimating to it, but never saying that she was an accomplice in this act. So, her reliability and credibility, when you add that to her five felony forgery convictions and her five felony thefts that weren't outlined in detail in the affidavit, you just don't have probable cause if the district court, who should be the fact finder, not this court. This court is not... That's sort of my dilemma in this case, is the posture of the case with the transcript having been admitted before this court for appeal and for me to review on appeal, which is what the idea was in district court, literally places this court in a fact finder situation where the district court should be the fact finder. The district court should be the fact finder to determine if the transcript indeed justifies a Frank's hearing and the district court should be the fact finder to determine whether or not the government's right in stating that Mr. Carrasco had this transcript well before he claimed. Right now, the posture of this case is forcing this court into being the fact finder. This is not a case where the constable blundered, it was the agent who blundered. I don't know what my point is, but... So could you repeat that, Your Honor, I'm sorry. Well, that's a gratuitous comment on my part. This is not a case where the constable or the judge blundered, it's a question, a case where the agent, according to your view, was deliberately deceptive. Deliberately or recklessly. Oh, recklessly. Yeah. And, you know, reckless disregard of the facts because... Well, of course, his aid to this confidential informant was not as pure as the driven snow. And neither is she pure of the, or he, she, pure of the driven snow. But he, she also didn't admit to being an accomplice in a crime, which is what adds to credibility. She is, he, she is actually distancing... to outline this person's complete past. I guess your answer would be, well, however many pages it would take. At least to inform the magistrate that this informant was not completely candid in outlining his, her involvement in the, in the trip from Hermiston, Oregon to Montana. The informant was asked, on, the informant was asked, excuse me, whether she had knowledge as to the methamphetamine going to Mr. Carrasco. The informant answered, I knew he wanted to bring Pedro something. I did not know that he had it to bring, though. I did not know that. This informant appears to want to try to skate responsibility, yet not admit responsibility. All throughout this transcript, that's what this informant is doing. And to affirmatively state in the affidavit of probable cause that the informant said, this methamphetamine was targeted for Pedro Carrasco's house, when in fact the co-defendant who owned the methamphetamine said it was going to the Pelican truck stop. So, I believe the posture of this case, because this is supposed to be a conditional plea where a dispositive motion to suppress comes to this court and the court has to decide whether or not the district court erred in, in all the issues. Did you want to save some time for rebuttal? Yes, please. Thank you. Okay. Thank you. Good morning. May it please the court. Brendan McCarthy on behalf of the U.S. Attorney's Office, District of Montana. This court should affirm the district court's decision and affirm the defendant's sentence. I guess just to, you know, address this kind of shifting argument now that it's, that the defendant had entered this conditional plea without a complete record, you know, his, his argument is that there was this statement from the confidential source, and he's now arguing that it wasn't turned over until after these motions had all occurred. But that's not, that's not true. You mean her statement? Right. The transcript of her interview. I can say that that, firmly, that was turned over from the beginning. It was made available to a defense counsel. Even in his, one of his first attorneys, Lisa Bazant, had filed this motion to transport the defendant to the Yellowstone County Detention Facility. In that motion, she mentions that there are, there's lots of evidence, including audios of witness statements, and she said that she's reviewed some of those statements during the hearing. Again, she said she spent time at the U.S. Attorney's Office reviewing the statements. And then, really, then you, you know. Does she acknowledge in particular that she listened to the, to the transcript or the tape of the? She doesn't specifically say that she listened to the C.S.'s statement, but that the, the witness statement, there's, there's, I mean, that's, that's our witness in this case is the C.S. Okay. And then, the, you know, all that happens is, later on, his final attorney, Wendy Holton, there's this status of counsel conference, and she admits, Wendy says that she has the statement at that time. She's going to try to get it transcribed. But her saying that she has the transcript of that time does not mean that it was turned over at that time. Her attorneys had the statement throughout. And, to, to dovetail up Judge Woolman's point, the question here, as I understood it, was whether or not the agent was deliberately deceptive. And before we get to that, I just want to say that the, even if you take away some of these claims in the appellant's brief, there's still absolutely enough to establish probable cause in the search warrant in this case. To lay it out simply, the, there was a traffic stop on February 7th, 2016, in Missoula where two and a half pounds of methamphetamine are found in the vehicle. There's three occupants. One of the occupants decides to cooperate, becomes an informant, and provides information to the agents, is able to, says that they're going to see Pedro Carrasco. They're, she describes this drug trafficking organization from, from kind of Prosser, Yakima, Pasco area of Washington. They're going to see Pedro Carrasco, because that's the only person in Montana that this organization deals with, Pedro Carrasco and Billings. She's able to identify a photo of Pedro. She's able to identify a photo of Pedro's house. She's able to identify photos of other co-conspirators, Herman Garcia and Martin Meraz. She has Pedro Carrasco's phone number. Now, the agents had been investigating Pedro for three years, because there was a drug dealer out of Idaho that had been going to his house. During that investigation, they knew where Pedro lived, they were able to determine what Pedro's phone number was, and the phone number that they had for Pedro is the same phone number that the CS provided to them. And then, I think, the, you know, this is not an anonymous tipster. This is a CS who knows about this drug trafficking organization for the past four years. The statement as transcribed is 130 pages. Certainly, as Judge Woolman was saying, the government's not going to submit a 130-page affidavit as part of a search warrant. But going back to the probable cause, the CS is able to make a phone call to Pedro Carrasco, and he says, I will see you when you get here. And the agents listened to that call. At that point, there is certainly enough to get probable cause, and that's – the district court made that finding in the initial order. The court said that the CS's firsthand knowledge of Carrasco's drug trafficking out of his was enough to provide Judge Ossoff with probable cause to issue the warrant. That's Volume 2 at 164, 165. And the court is citing United States v. Elliott. That's 893 F. 2nd 220 at 223, which says, a detailed eyewitness report of a crime is self-corroborating. It supplies its own indicia of reliability. And the defendant can't really contest those factual statements. To defend the counsel, at some point in this motion, he's saying that the CS didn't observe methamphetamine or wasn't aware that methamphetamine was being distributed during his previous trips. But in the CS's statement, the CS specifically says that in the trip in Christmas of 2015, she knew that they were transporting a pound and a half to two pounds of methamphetamine to Billings, Montana. She went to Pedro's house with a couple of the other co-conspirators. Pedro provided only $5,500 for the $20,000 he owed. And she basically explained that during that trip, they were fronting methamphetamines. Pedro, she was going to stay in Billings while Pedro sold the methamphetamine and paid them for it. So why do you think that the officer, in paragraph 22 of the affidavit, where he says, the CS has a history of theft, forgery, and trespassing, omits the actual convictions? That omits the actual. So we certainly, you know, this was addressed. What was he doing there, or not doing? So he didn't put in the specific dates or the amount. So it was sort of a terse summary. But a few points. One, it certainly indicated to the court that the CS does have these prior crimes, offenses. And I think I would like to bring up United States v. Melling. That's 47 F3rd at 11546. That had to deal with a wiretap case. Agents had not put in a prior conviction for forgery. It was a 10-year-old conviction. This court found that that 10-year-old forgery conviction was stale. And in that case, because there was other information that corroborated the CS's statement, this court did not believe that that was an omission or a material statement. So I think that we're in the same posture here. If you look at the criminal history report, these are felonies from Washington that were about 11, 12 years old. The court was alerted of that, was also alerted of the fact that the CS is cooperating because the CS may be facing drug charges. So the court, the magistrate, Judge Osby, certainly knew that. Well, in that same paragraph, the officer wrote, the CS is cooperating with DEA for consideration of a possible drug trafficking. That's correct. Drug trafficking charges. That's correct. In your view, is it your view that this case is clearly distinguishable from Perkins in that there's no allegation of clear intentional fabric? There's no evidence to show that there was any clear misleading or false statements by the agents when they put together this affidavit. I'm trying to think of the old cases. This goes back to when you were not even in grade school, Aguilar, Spinelli cases. I think the court mentioned that an affidavit is not an entry in an essay contest, but... Certainly, Judge. ...the U.S. attorney doesn't make you wince that this agent didn't put in more? That's probably not a good question. Well, I just, I would like to go back. I mean, these allegations that there's these discrepancies, if I could just go back to the actual record, when the agent asked how much dope was supposed to come to Pedro on his trip, the informant did first say, I don't know, but then she says, I know that as much as he could get, I know that Santana wanted to restart the kilo thing because that's how it seemed to make the most money. And then the agent says, so to bring him the dope, as much dope as he could get, meth. And then the CS says the plan was for him, he sounded like he wanted to stay and he wanted to hold on to it and he wasn't going to give it to him all at once. The informant, the agent says, so Santana is going to hang in Billings and just kind of give it to him a little bit at a time. And the, and CS says, I believe it was the other guy that came with us. He was going to stay around and hang out. And then the agent says, so Santana is going to give it, going to have Garcia hang out. And the informant responds affirmatively. That's at volume three at 32425. And then if you, just a few pages more ahead, the agent says, when they're, the informant had explained that when they were in Hermiston, Oregon, she was there with another individual. They put the speaker boxes in the car. And then she says that we got, we would get, go to the house, Santana would get in and he would talk to him and they would look at the dope and Pedro would say, try it and see if you like it. And then depending how good, he would start to shell out the money. So she was telling them what was going to happen once they got there. All right. Thank you, counsel. I think you had a minute for rebuttal. Again, Your Honor, I just want to reiterate, the district court has not had a chance to review this affidavit and determine whether or not, first of all, substantial showing could be made. And number two, whether the position of the government is accurate and, or the position of Mr. Pedro. We're, again, we're here in a very unique situation where the record is not complete. That's why I'm asking for this case to be remanded to the, the district court because what additional evidence would be submitted there? Well, the evidence that the second trial counsels didn't put before the district court and yet convinced Mr. Carrasco to take a conditional plea based on an incomplete record. But you're talking about the transcript of the interview. I am. Is that what you're talking about? Yes. Yes. That was not presented to the district court for the court to decide and make findings of fact. What the government's asking this court to do is to be the fact finder instead of upholding the district court's determination based on a complete record. I thought you had an IAC claim as well. Yes. Related to this. Say what? Related to this. Yes. For the, yes, for the, the failure to request a Frank's hearing without a complete record. And, and Your Honor, I just wanted to reiterate, I do think that it wouldn't have been that difficult for the agent to list five felony forgery convictions and five theft convictions that are in the state of Washington crimes of dishonesty coupled with the fact that she wasn't admitted to involvement in any crimes in this case other than that she was along for the ride. I would ask the court to remand this case to the district court. Thank you. May I ask one more question? Sure. Yes. I think I know the answer that you're going to give me. But could this court not view those things that you think should have been presented to the district court and then conclude it wouldn't make any difference? Can we make that value judgment up here on the basis of a cold record? Well, I, that's why I say this is a unique posture. I guess this, this court could, but normally a case comes before the court with a record that, and findings by the district court to determine whether the district court was right or wrong. And in this case, the district court was deprived of that opportunity. Thank you. Thank you, counsel. The matter is submitted at this time.
judges: Wollman, Fernandez, Paez